UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TENDERCARE SELLERS COMMITTEE,

        Plaintiff,                        Case No. 1:10-cv-750

v.                                        HON. JANET T. NEFF

EXTENDICARE HEALTH SERVICES, INC.,

        Defendant.
_____/

## OPINION

Plaintiff brought a declaratory judgment action in state court against Defendant, which Defendant removed to this Court. Defendant then filed a motion to dismiss the action or, in the alternative, to stay the action pending arbitration pursuant to the Federal Arbitration Act, 9 USC § 1 *et seq*. Having fully considered the motion and briefs submitted by the parties, and finding oral argument unnecessary, the Court determines that this action is stayed pending arbitration.

I. Background

Plaintiff brought a declaratory judgment action in state court against Defendant, seeking a declaration of right under a contract agreement. The dispute concerns Defendant's proposed reconciliation of payments in the sale of a business involving nursing care and related health facilities. The sale closed in October 2007. Amendments to the closing price were contemplated in the contract documents, which include a Securities Purchase Agreement (SPA) and a Balance and Guaranty Agreement (BGA). At issue is the accounting method used for vacation pay: whether an adjustment should be made because Plaintiff should have, under generally accepted accounting

practices (GAAP), accrued vacation pay as current liabilities instead of taking them as cash expenditures at the time they were paid.

In its motion, Defendant claims that the vacation pay issue was properly raised as part of the proposed 2010 adjustment under the terms of the BGA. The BGA, a contract appended to the SPA and signed at Closing, provides a mechanism for certain purchase price adjustments to be made after the second, third, and fourth anniversaries of the Closing. It has an arbitration provision (BGA § 10.6), which provides that disputes be submitted to an independent Accounting Firm.

Plaintiff does not dispute that the BGA is a binding contract that contains a valid arbitration clause. Instead, it argues that the motion should be denied on the grounds that the dispute is not within the scope of the contract that contains the arbitration clause. Specifically, it maintains that the SPA, not the BGA, covers Defendant's claim regarding vacation pay. There is no arbitration provision in the SPA. Plaintiff characterizes Defendant's claim as a breach of the warranty that its financials were prepared in accordance with GAAP (SPA § 3.5) and maintains that the vacation pay dispute is not within the purview of the BGA because it has nothing to do with "post-Closing events" or an amount that could not have been "known at the time" of Closing.

II. Legal Framework

"Before compelling arbitration, a court must determine whether a dispute is arbitrable, 'meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement.'" *Nestle Waters N. Am., Inc. v. Bollman,* 505 F.3d 498, 502 (6th Cir. 2007) (quoting *Javitch v. First Union Sec., Inc.,* 315 F.3d 619, 624 (6th Cir. 2003)).

Principles to be applied in assessing whether a case should be sent to arbitration are described in *Alticor, Inc. v. National Union Fire Insurance Co.*, 411 F.3d 669, 672-73 (6th Cir. 2005). The first is a presumption in favor of arbitration:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

A second, no less compelling principle is respect for the terms of contract documents:

> "[the Federal Arbitration Act] simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989); *accord Roney & Co. v. Kassab*, 981 F.2d 894, 897 (6th Cir. 1992); *Wiepking v. Prudential-Bache Sec., Inc.*, 940 F.2d 996, 998 (6th Cir. 1991). In determining the arbitrability of a dispute, courts do not "reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002); *see also Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005).

*Id.*

One measure for assessing whether a dispute is within the scope of an arbitration agreement is whether the claim can be resolved without reference to the contract document containing the arbitration clause. As the Court of Appeals for the Sixth Circuit explained in a case involving contractual and statutory counts:

> while we must bear in mind the presumption of arbitrability, the cornerstone of our inquiry rests upon whether we can resolve the instant case without reference to the agreement containing the arbitration clause. *See Nestle Waters*, 505 F.3d at 505. If such a reference is not necessary to the resolution of a particular claim, then compelled arbitration is inappropriate, unless the intent of the parties indicates otherwise.

*NRC Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 814 (6th Cir. 2008).

In *Nestle Waters*, the parties had entered into several contracts as part of one overall transaction, and the court determined that the arbitration clause in one of the documents was sufficiently broad to encompass a dispute arising from another document. 505 F.3d at 503. Here, there are two relevant contract documents which, by their terms, confine the scope of the arbitration clause to one of the documents. If a contract with an arbitration clause can be characterized as applicable to the dispute, a claim should be sent to arbitration. Arbitrability thus hinges on whether the dispute is deemed to be governed by the SPA or the BGA. If the answer is that both contracts have some bearing, the presumption toward arbitration requires that the case be arbitrated.

### III.  Arbitrability

The BGA and the SPA merit equal scrutiny because both contracts were executed as part of the Closing and both address claims that may arise after the Closing. The SPA sets forth Representations and Warranties in Article III and, in § 10.6, states that Article X- <u>Indemnification</u> is the sole and exclusive remedy for matters arising under the SPA. Article VIII of the BGA reinforces this provision. It states:

> Except as otherwise expressly set forth herein, there shall be no adjustment under this Agreement to the Closing Net Working Capital or otherwise with respect to claims or liabilities that are first asserted after the Effective Time and are contested . . .. All other employee or other claims shall be resolved in accordance with Article X (Indemnification) of the Securities Purchase Agreement.

If Defendant's claim for an adjustment could only be characterized as an indemnification claim, it would be resolved under the SPA, and the arbitration provision of the BGA would not apply.

The scope of the adjustments allowed under the BGA is, however, extensive. Articles IX, X, and XI provide for repeated adjustment of Net Working Capital and Project Incurred Costs and,

ultimately, corrections of the Purchase Price. Adjustments may be made for accounting irregularities (BGA § 1.2(c)), as well as post-Closing events such as changes in accounts receivable (Article II), Medicare/Medicaid audits and settlements (Article III), vacation pay liabilities (Article IV), and taxes (Articles V and VII).

Section 1.2(c) of the BGA is particularly relevant to Defendant's claim. It states that Defendant had not been given the opportunity to validate Plaintiff's accounting and had identified certain accounts where GAAP was not applied consistently. Section 1.2(c) concludes:

> Therefore, to the extent that GAAP, as of December 31, 2006, has not been applied, the accounting records, for purposes of preparation of Net Working Capital and Project Incurred Costs[,] will be adjusted to reflect GAAP.

This provision does not limit adjustments to items that were unknown or could not have been known at the time of Closing. In fact, it explicitly includes known irregularities in the scope of the adjustments to be made pursuant to the BGA.

In arguing that Defendant's claim is an indemnification claim exclusively within the scope of the SPA, rather than a claim for adjustment, Plaintiff characterizes it as a claim for breach of SPA § 3.5 Financial Statements. Section 3.5 states that each of the financial statements delivered to Purchaser "is complete and correct in all material respects, has been prepared in accordance with GAAP" and "presents (except as otherwise indicated in the notes thereto) fairly in all material respects" the financial position and cash flow of the Company. This section of the SPA does not, however, convincingly remove the issue from the scope of the BGA. The financial statements are referenced in the BGA at § 1.2(c). As quoted above, that section provides that the financial reports will be adjusted to reflect the GAAP.

The contract documents thus do not expressly confine Defendant's claim to the indemnity provisions of the SPA.  Provisions in the BGA can be read to allow the adjustment Defendant has requested.  A stay pending arbitration is warranted because the specific dispute is arguably within the substantive scope of the BGA, which contains a valid arbitration clause.

Accordingly, Defendant's Motion to Dismiss or, Alternatively, to Stay this Action Pending Arbitration (Dkt 6) is GRANTED.  This case will be stayed pending arbitration.  An Order consistent with this Opinion will be entered.

DATED: June 14, 2011              /s/ Janet T. Neff
                                  JANET T. NEFF
                                  United States District Judge